FILED

2012 JUL -3 PM 3: 25

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

LODGED

2012 JUL -2 AM 9:50
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

1  Laurack D. Bray
2  P.O. Box  611432
3  Los Angeles, California  90061
   Tel:  (805) 901-2693
4
5  Plaintiff Pro Se
6
7              UNITED STATES DISTRICT COURT
8              CENTRAL DISTRICT OF CALIFORNIA
9
10 LAURACK  D. BRAY, and on behalf of       CV12-5704-CAS(RZ)
11 CONRAD MURRAY and OSCAR GRANT,           NO._____
   deceased,  and other
12 similarly-situated black male
   professionals/semi-professionals
13
14                  Plaintiff,             VERIFIED*
                                           CIVIL RIGHTS COMPLAINT
15 v.
                                           FOR  PERMANENT
16 DEPARTMENT OF JUSTICE(U.S.); UNITED STATES  INJUNCTIVE RELIEF AND
17 OF AMERICA; ERIC HOLDER,  ATTORNEY  GENERAL  DAMAGES
   OF THE UNITED STATES, in his official capacity;
18 UNITED STATES ATTORNEY'S OFFICE,
19 LOS  ANGELES;
20 ANDRE  BIROTTE , UNITED STATES ATTORNEY,    JURY TRIAL DEMANDED
   LOS ANGELES, in his official capacity and individually;
21 FEDERAL BUREAU OF INVESTIGATION;
22 ROBERT S. MUELLER, DIRECTOR, FEDERAL BUREAU
   OF INVESTIGATION, in his official capacity;
23 UNNAMED ASSISTANT DIRECTOR IN CHARGE, FBI
24 LOS ANGELES DIVISION, in his official capacity;
25 UNNAMED ASSISTANT U.S. ATTORNEYS, LOS
   ANGELES, in their official capacities and individually;
26 TANI-CANTIL-SAKANYE, CHAIR, JUDICIAL COUNCIL OF
27 CALIFORNIA, in her official capacity; ERIC SHINSEKI,
28
                             1

1  SECRETARY OF VETERAN AFFAIRS, in his official capacity;
2  SUPERIOR COURT OF CALIFORNIA;  THOMAS O'BRIEN,
3  in his official capacity in his former position as U.S.
   Attorney, Los Angeles and individually;   PATRICK R.
4  DONOHUE, POSTMASTER GENERAL OF THE UNITED
5  STATES, in his official capacity; STEVEN HINTZ, BARRY
   KLOPFER, KEN RILEY, and DAVID LONG, in their official
6  capacities as former Superior Court of California, Ventura
7  County, judges and individually;  ROBERT PERRY and
   MICHAEL PASTOR,  JUDGES, SUPERIOR COURT OF
8  CALIFORNIA , LOS ANGELES COUNTY,  in their official
9  capacities and individually; and STEVEN R. SELLLERS, in his
   official capacity as trustee-owner and individually.
10

11

12                                            **Defendants,**

13  and

14
    HAROLD  JAMES GRIFFITH, GREGORY SECOR, and
15  JEANETTE M. ANDREWS, and  HELEN H. DAVIS
16

17
    **Real Parties in Interest.**
18  _____
19
    *Factual  allegations
20

21
                    **STATEMENT OF THE CASE**
22

23  1 .   This case involves  a  black lawyer, as a citizen and a lawyer, filing several

24  criminal- civil rights complaints in the U.S. Attorney's Office in Los Angeles against

25  mostly white public officials, and the U.S. Attorney's Office refusal to prosecute

26  any of the complaints.

27

28                                     2

2. This case also involves individuals in the U.S. Attorney's Office sending letters to the black lawyer (and other citizens who, at times, had joined the black lawyer in filing complaints) stating that the U.S. Attorney's office do not conduct criminal investigations. Finally, the case involves the State of California, through Superior Court judges, denying black professionals constitutional rights during judicial proceedings.

3. The central issue in this case is: whether the United States (or the Federal government) and/or the State of California (or the State) discriminated against the Plaintiff herein, based on his race or color, as an individual and/or as a lawyer, in their dealings with him during state or federal Judicial or Executive proceedings?

4. Some sub-issues in this case will revolve around the central issue listed above, e.g., the federal government's surveillance of Plaintiff, including opening and searching his mail, and intercepting his mail at a local post office; but at least one issue, a medical malpractice issue, will be independent of the central issue.

5. This case represents the culmination of a number of discriminatory and/or criminal acts directed against Plaintiff and sometimes his clients by the Defendants. And, while it will be necessary to review some of those past acts in order to reach a proper decision in this case, the main focus of this case will be on recent decisions or acts of discrimination that affect and deny constitutional and statutory rights.

6. The primary factual scenario that triggered the ongoing and now culminating dispute as to whether the federal government, principally, has discriminated against Plaintiff racially, and in doing so, has denied Plaintiff constitutional and statutory rights, is as follows: in 2003, during an unlawful detainer *jury* trial involving Plaintiff (and Plaintiff specifically requested and paid for a jury trial---

most unlawful detainer proceedings were conducted through bench (or judge) trials)), the white Defendant Superior Court judge, Ventura County, California, intentionally answered a jury question (that was required to be answered by the jury---in fact, the question the jury asked nearly mirrored the first, and outcome determinative, question asked on the jury verdict form) and answered it in a way that caused a jury verdict against the black defendant (Plaintiff herein), which resulted in Plaintiff's wrongful eviction from his combination home-law office. After the unlawful verdict, the judge then went on to exclaim in open court, without a request having been made by the black defendant (Plaintiff), that he would not be granting the defendant a stay (which precluded and denied a hearing on a stay request without a request having been made). Although a Ventura County state appeals court, "under the table" (telephonic—no paper trail), ordered the Superior Court (which, in turn, and over objection, assigned the same judge) to hold a hearing, the judge still denied the stay by ordering an extremely high bond (under the circumstances) be paid. So, the black defendant-lawyer (Plaintiff) was evicted from his home-law office, under the supervision of an armed law officer . Plaintiff's attempt at acquiring justice and a reversal of the unlawful , discriminatory, and wrongful eviction was the catalyst for the ensuing and continuous litigation and discriminatory, criminal, and unconstitutional acts to follow.

6A.    Plaintiff will seek relief from the judgment in the wrongful eviction on constitutional and/or due process grounds, as being void for illegality (on state law as well as constitutional grounds—the unlawful detainer action was brought based on a non-payment of rent, but Plaintiff proved through testimony of the

4

property manager that he had never missed a rent payment and the notice of eviction was defective).

7.    Prior to Plaintiff's wrongful eviction, it is clear that Plaintiff , who was the only Black lawyer with a private practice in the city of Ventura, CA, and the only Black lawyer with a practice emphasizing federal law in the County of Ventura, provided valuable services to the community, especially the minority community. See    In the Matter of Robin J. Crammond, 23 I & N  Dec. 9 (BIA  2001), vacated on other grounds, 23 I & N  Dec. 179 (BIA  2001)  and  Jackson v. Guirbino, 364 F.3d  1002 (9th  Cir.  2004)(what the reported case does not state is that Plaintiff was retained by Jackson's parents  to intervene and represent Jackson on appeal after  Jackson had  initially proceeded pro se and filed his own Opening Brief. And, after Plaintiff filed a Supplemental  Brief,  it was the Miranda issue raised and argued in Plaintiff's supplemental brief (and  during oral argument)  that caused the reversal of Jackson's  murder conviction).

8.    Instead  of the FBI and the U.S. Attorney's  Office investigating and prosecuting the criminal-civil rights complaints brought by Plaintiff (and, in at least one complaint, two clients of Plaintiff), they undertook to investigate and/or conduct surveillance of Plaintiff .   One type of surveillance of Plaintiff was intercepting  his mail sent from Plaintiff's Muslim client. The government's opening of Plaintiff's mail was not only an illegal search and an  invasion of privacy, but it was also a crime.  See 18 U.S.C. secs. 1702 and 1703.   And, this provides some evidence that the surveillance was illegal.

9.    When the U.S. Attorney's Office (USAO) refused to investigate and prosecute the civil rights and other claims, e.g., false statement claims, it denied Plaintiff his

5

statutory and due process rights to restitution, because the only way Plaintiff can receive restitution is for a defendant to be tried and convicted.

10.   The Fifth Amendment of the U.S. Constitution guarantees that no person shall be "deprived of life, liberty, or property, without due process of law. . . ." Plaintiff's personal and professional life have been ruined by the actions of the Defendants herein since his wrongful eviction in 2003.   He has not recovered from the loss of his home and law office and other actions of the Defendants herein.  He has not acquired another law office (and has not been able to acquire one) since his eviction.   His personal and professional life has been changed forever.  His life, as it was, will never be the same  again.

11.   Through this lawsuit, Plaintiff seeks permanent injunctive relief and damages.  More specifically, Plaintiff seeks injunctive relief affecting  both possessory and ownership rights to the property located at 1019 E. Santa Clara Street, Ventura, CA, based on the duration of time and damages; other injunctive relief with respect to the government's  illegal surveillance and gathering of information, and other damages  based on the claims set forth below.

## JURISDICTION AND VENUE

12.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. secs. 1331 and 1343;  42 U.S.C. secs. 1981, 1982, 1983, and 1985;  28 U.S.C. secs. 2671-2680 and 28 U.S.C. secs. 1346(b)(1) and 2674 (Federal Tort Claims Act); and 5 U.S.C. sec. 552.   Plaintiff also asserts F.R.C.P., Rule 60.

13.     This Court also has  jurisdiction to grant damages and injunctive relief, or other appropriate relief pursuant to *Bivens  v. Six Unknown Agents*, 403 U.S.  388 (1971) .

14.     Venue is proper in the Central District of California under 28  U.S.C. sec. 1391(b)  because a substantial part of events or omissions giving rise to the claims herein occurred in this District.

**PARTIES**

15.     Plaintiff  Laurack  D. Bray is a 62 year old African American or Black lawyer, who practices federal law only in California.  He now  resides in Los Angeles, but he considers Ventura, CA his primary residence.  Plaintiff is also a Vietnam Era veteran, having served his military time in Stuttgart, Germany as a social caseworker at the 5th General U.S. Army Hospital  in Bad  Cannstadt, Stuttgart, Germany.   Plaintiff  exited the military with an honorable  discharge in 1976.   Prior to his military service,  Plaintiff had graduated and obtained his high school diploma  from Fremont High School in Los Angeles, CA ; an A.A. degree from Los Angeles City College; and a B.A. degree in Social Welfare from California State University, Long Beach.   After leaving the military, Plaintiff returned to Cal State Long Beach (or Long Beach State) and obtained a M.S. in Recreation Administration and subsequently, a  M.P.A. in Public Administration.   Finally,  he acquired a law degree from Howard University in Washington, D.C..   He has engaged in private practice since leaving law school , and he has practiced law for over 25 years, mostly as a sole  practitioner.

7

Plaintiff is also bringing this lawsuit on behalf of Conrad Murray, a doctor, and Oscar Grant, deceased, a former butcher, both professional/semi-professional black males. Both Murray and Grant were part of what Plaintiff alleges was a pattern of discrimination against black male professionals by the Superior Court of California.

16.     Defendant Department of Justice (U.S. Attorney's Office (USAO), Los Angeles) is an agency of the federal government.   It conducts criminal and civil investigations and prosecutes criminal, civil, and civil rights matters.

17.     Defendant United States of America is the federal government. The United States is the parent of all federal agencies and/or departments.

18.     Defendant Eric Holder is the Attorney general of the United States.  He is responsible for the direction and oversight of all operations of the Department of Justice and USAOs throughout the country, including investigations, the bringing of prosecutions, and seeking restitution from Defendants upon their convictions.   He is sued in his official capacity.

18A.   Defendant Federal Bureau of Investigations (FBI) is an agency of the federal government which conducts criminal investigations within the meaning of the Privacy Act.   It maintains records on persons or groups whom its agents have investigated, including Plaintiff.  The FBI is being sued for injunctive relief only.

18B.   Defendant Robert Mueller is the Director of the FBI.  He is responsible for the direction and oversight of all operations of the FBI,  including record keeping and  retention, especially arising from investigations of FBI agents.  He is being sued in his official capacity for injunctive relief only.

8

19.   Defendant Andre Birotte, U.S. Attorney for Los Angeles.  He is responsible for the direction and oversight of all operations of the Los Angeles office of the USAO and Department of Justice.  He was responsible for a fraudulent letter being sent to Plaintiff.   He also intentionally denied Plaintiff restitution through a pattern of misconduct.   He is being sued in his official and individual capacities.

19A.   Defendant United States Attorney's Office, Los Angeles is an arm or sub-agency of the U.S. Department of Justice, and it is responsible for investigating and bringing criminal prosecutions and conducting civil investigations as well.

20.   Defendants Assistant United States Attorneys (AUSAs) 1-10 are attorneys that provide assistance to and are supervised by the U.S. attorney.  Especially those AUSAs working in the Citizen Unit of the Los Angeles Office of the USAO. The AUSAs are being sued in their official capacities and individually.

21.   Defendant Thomas O'Brien is the former U.S. Attorney for Los Angeles who preceded Birotte.   He is also responsible for a fraudulent letter being sent to Plaintiff.   O'Brien also intentionally denied Plaintiff restitution through a pattern of misconduct involving a refusal to investigate criminal complaints filed by Plaintiff.   O'Brien is being sued in his former official capacity and individually.

22.   Defendant Patrick R. Donahue is the Postmaster General of the United States and is responsible for the operation, direction and oversight of postal service in the country.   He is being sued in his official capacity.

23.   Defendant Tani-Cantil-Sakanye is Chair of the Judicial Council of California, which is charged with supervisory authority over and the administration of the Superior Courts of California.   She is being sued in her official capacity.

24.     Defendant Superior Court of California is responsible for the provision and operation of judicial or court services for the administration of justice in the State of California.

25.     Defendant Steven Hintz is a former judge of the Superior Court of California, Ventura County, and is now, unless it has changed, Treasurer-tax collector of Ventura County. He is involved with the primary acts of discrimination and other misconduct leading up to the specific claims of this Complaint. He is being sued in his former official capacity as a judge and individually.

26.     Defendants Barry Klopfer, Ken Riley, and David Long are former judges of the Superior Court of California, Ventura County. These Defendants acted as appellate judges for Plaintiff's appeal of the judgment in his wrongful eviction matter.   They are charged with discriminatory misconduct in issuing their appeal decision. They are being sued in their former official capacities as judges and individually.

27.     Defendant Eric Shinseki is the Secretary of Veteran Affairs and is responsible for the administration and operation of veteran services. He is being sued, in addition to the United States, for negligence in the administration of veteran medical claims pursuant to the Federal Tort Claim Act .

27A.   Defendants Robert Perry and Michael Pastor are judges of the Superior Court of California, Los Angeles County.   Judge Perry presided over the trial of Johannes Mehserle, who was charged with the second degree murder of Oscar Grant . Mehserle was eventually convicted of involuntary manslaughter. Judge Pastor presided over the trial of Conrad Murray, who was charged with

and  convicted of the involuntary manslaughter of Michael Jackson.  Judges Perry and Pastor are being sued in their official capacities as judges and individually.

27B.    Defendant Steven R. Sellers is the Trustee-owner of the property located at 1019 E. Santa Clara Street, Ventura, CA, 93001.

28.    Defendants Does 1-10 are agents of the Federal Bureau of Investigation and United States Department of Justice, to include present and former AUSAs, whose identities are not yet known to Plaintiff, and who either authorized, directed, and/or actively monitored the actions alleged herein in order to engage in surveillance of Plaintiff or to perpetuate fraudulent acts to deny Plaintiff statutory or constitutional rights, at least in part because Plaintiff was African American or Black.  Defendant Does are also postal service workers at the LaVerne, CA  or Los Angeles, CA  post office sites who opened Plaintiff's mail prior to the mail being delivered to Plaintiff through his post office box .

## FACTUAL  ALLEGATIONS  AND  CLAIMS

### COUNT  I
### RACIAL DISCRIMINATION

### Violation of 42 U.S.C. secs. 1981, 1982,  and 1985

### Violation  of Due Process/Equal Protection Clause of Fifth Amendment

### *Bivens*  Action

### (Against Federal Defendants)

29.    Plaintiff incorporates Paragraphs  1-28 as if fully set forth herein.

30.    Laurack D. Bray is African  American or Black.  Also see Paragraph #15 herein.

31.    Beginning in the year 2007,  Bray  has filed several criminal-civil rights complaints with the U.S. Attorney's Office (USAO) in Los Angeles and attempted to have those complaints investigated and prosecuted by that said office or the Federal Bureau of Investigation (FBI).

32.    But, the USAO  refused to investigate and prosecute the complaints because (at least in part) Bray is African American or Black.

33.    The  USAO,  including  former United States Attorney  Thomas P. O'Brien and present United States Attorney  Andre  Birotte, and former and present Assistant United States Attorneys and others working in the Citizens Unit of the USAO,  knew Bray was Black when it refused to prosecute  criminal complaints filed by Bray.   The USAO's  conduct was motivated by Bray's race (African American or Black).

34.    Thomas O'Brien and Andre Birotte as U.S. Attorneys denied Bray the right to full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens by refusing to investigate and prosecute multiple criminal complaints brought by Bray.

35.    O'Brien and Birotte, instead of providing Bray with the full and equal benefit of the laws and proceedings for the security of persons and property,  especially the laws dealing with bringing criminal prosecutions and securing the rights of

victims and their property, violated federal laws which were put in place to protect and secure the rights of victims of crime.

36.    In all cases where the USAO , and O'Brien and Birotte, refused to investigate and prosecute a criminal complaint brought by Bray, the complaint was accompanied and/or supported by probable cause evidence, or there was enough evidence or sufficient probable cause to make an arrest.

37.    O'Brien and Birotte's refusal to investigate and prosecute criminal complaints brought by Bray was done under circumstances giving rise to an inference of racial discrimination and/or was not done to other similarly-situated persons not of Bray's protected group.   One such circumstance is that several of Bray's complaints involved allegations of false statements or fraud; and clearly, the U.S. attorney's Office in Los Angeles prosecuted multiple false statement and mail fraud cases at or about the same time that it refused to investigate and prosecute the complaints brought by Bray, even though Bray's complaints were supported by probable cause evidence.   The same thing applies to Bray's obstruction of justice complaints.

38.    For another example, in 2007, when Bray filed a criminal complaint against various public officials, including judges, even though O'Brien and his office refused to prosecute anyone, the FBI found sufficient probable cause evidence that a crime had been committed to require two Superior Court of California, Ventura County, judges to retire from the bench, Steven Hintz and Barry Klopfer, as part of an informal plea agreement.   That is, the FBI, rather than arresting Hintz and Klopfer (based on probable cause evidence), gave the two the option of retiring from the bench rather than being arrested and prosecuted.

39.   In the 2007 Complaint, Bray, who is Black, charged  Hintz, who is white, with racial discrimination in causing Bray to be evicted from his home-law office in Ventura, California,  while Hintz was the  presiding judge over an unlawful detainer action brought and decided in 2002-2003.

40.   O'Brien  refused to prosecute Hintz or  Klopfer because both of them were white, and the criminal complaint against them had been brought by a Black lawyer-complainant.

41.   In  2010, after Birotte took over the U.S. Attorney's Office, he was aware that O'Brien had not prosecuted Hintz for the 2007 criminal complaint brought by Bray,  and he became aware of a second or amended complaint against Hintz brought by Bray based on  Hintz's  criminal activity (fraud/mail fraud) conducted during the primary and general elections.   Yet, Birotte refused to investigate the complaint or pursue prosecution of Hintz as well.

42.   At the same time that O'Brien and Birotte were refusing to investigate and prosecute any of the individuals charged in any of Bray's criminal complaints, they were investigating and prosecuting other individuals who had been charged with some of the same types of crimes that Bray had complained about, e.g., false statements, mail fraud, etc. .

43.   O'Brien specifically knew about Bray's complaints because Bray and some of his clients and their friends demonstrated and/or picketed in front of the federal courthouse in downtown Los Angeles,  protesting O'Brien's failure to bring prosecutions.   O'Brien had one of his Assistant U.S. Attorneys (AUSAs) contact Bray to say a response to the complaint would be forthcoming.   The response was a false and fraudulent letter claiming that the U.S. Attorney's Office does not conduct criminal investigations.   This false letter was likely sent to numerous

14

citizens whom had filed criminal complaints and whom the USAO did not want to investigate their complaints.

44.     A federal complaint was brought against O'Brien as well for making a false statement (through his office and the Citizens Unit).   And, a criminal complaint was later brought against Birotte for the same thing.

45.     O'Brien and Birotte both were charged with the responsibility and authority to prosecute criminal cases and/or complaints brought in the U.S. Attorney's Office or to the attention of the USAO.    They had direct authority to bring prosecutions of federal criminal complaints.

46.     Neither O'Brien nor Birotte contacted Bray for the purpose of gathering information pursuant to investigation of the particulars of the complaints.

47.     The United States government has exercised racial discrimination against Bray as a Black lawyer in litigating civil cases in federal courts in California both before and after Bray filed criminal complaints.

48.     In refusing to investigate and prosecute any of Bray's criminal complaint's, O'Brien and Birotte intended to and did deny Bray restitution, including injunctive relief and the right to re-possession of the property in Ventura, California located at 1019 E. Santa Clara Street.

49.     O'Brien and Birotte knew that Bray had charged that he was dispossessed of his property interest in the property in Ventura, CA, because of his race or color, and they intended to deny Bray the right to rent or own property because he is Black when they refused to prosecute Hintz or Klopfer (or any of the other defendants in the Complaint) so that Bray could receive restitution, including injunctive relief and re-possession of his property interest.

15

50.     When O'Brien and Birotte exchanged the U.S. Attorney's Office (O'Brien stepping down and Birotte taking office),  O'Brien informed Birotte that he had refused to prosecute Bray's Complaints, and Birotte agreed to continue the refusal to prosecute the Complaints when he took office.   When Birotte took office, there were at least 3  separate pending Complaints (with multiple individuals complained about in the 2007 Complaint) before him.   Presently, there are at least 6 Complaints pending (and these are single complaints with sometimes multiple accused or defendants, which, if filed separately for each accused, would amount to clear double-digit complaints).

51.     Bray requested Attorney General Eric Holder to appoint an independent counsel to prosecute the Complaints, but he refused to respond to the request.

52.     Bray also wrote to appointed special prosecutor John Durham, and requested that he conduct a review of the complaints as part of his duties pursuant to his appointment by the Attorney General.   But, Durham did not respond either.

53.     Both O'Brien and Birotte ordered or directed their subordinates to write false and fraudulent letters to Bray to support their refusal to prosecute his complaints and to support their refusal to obey federal law dealing with victims' rights.

## COUNT II

### CONSTITUTIONAL FRAUD

Violation   of the Fifth Amendment Due Process Clause

*Bivens* Action

Violation of Crime Victims Rights Act,  18 U.S.C.  sec. 3771(a)(6)

16

## 18 U.S.C. secs. 3663-3664 (Victim and Witness Protection Act)

54.     Plaintiff incorporates Paragraphs 1-53 by reference, as if fully set forth here.

55.     In March, 2008,  through and in a letter from the U.S. Attorney's Office in Los Angeles, received by Plaintiff,  the USAO  and O'Brien and unnamed  AUSAs stated that "The United States Attorney's Office does not conduct criminal investigations."  This was and is a false statement and misrepresentation, because, in fact, the U.S. Attorney's  Office *does* conduct criminal investigations.  And, because the letter was sent by mail, it was also mail fraud.

56.     The fact was material because a criminal investigation and prosecution is what was being sought by Plaintiff in his criminal complaint, which would ultimately lead to relief and/or restitution.

57.     O'Brien and the AUSAs in the Citizens Unit of the USAO intended to make the false misrepresentation, notwithstanding the fiduciary duty of the USAO to investigate and prosecute federal criminal complaints brought by citizens of the United States.

58.     O'Brien and the unnamed AUSAs used and relied on the false and fraudulent statement to avoid investigating and prosecuting Bray's Complaint, which denied Bray a due process examination and processing of his criminal Complaint(s).

59.     O'Brien and the unnamed AUSAs , in refusing to investigate and otherwise prosecute the said criminal complaints,  denied Plaintiff his statutory right to restitution which would have evolved from a prosecution and conviction.   By not investigating or prosecuting the criminal complaints, O'Brien and the others made it impossible to obtain or recover restitution.    Part of the restitution sought

would be injunctive relief and re-possession of Bray's property interest in the property located in Ventura, CA.    Moreover, Bray was also denied monetary restitution for loss of income based on the closure of his law office brought about by the criminal conduct of several defendants.  He also suffered much pain and a loss of enjoyment of life based on the  USAO's refusal to investigate and prosecute, while at the same time, using a  false statement and misrepresentation to support the refusal.

60.    The  sole purpose of the above false and fraudulent statement made to Plaintiff by the USAO was for the USAO to avoid or evade carrying out its duty to investigate and prosecute Plaintiff's Complaints.

61.    In January , 2011,  Birotte directed his subordinates to construct a similar letter to the letter constructed by O'Brien's office, falsely stating that the U.S. Attorney's Office  "does not conduct investigations".

62.    In fact, subordinates, including AUSAs, constructed such a letter, and the letter stated in part, "Please be advised that this agency <u>does</u> <u>not</u> conduct investigations. . . ." (Emphasis in original letter).   This was a false and fraudulent statement, or a "lie", and the letter containing the statement was mailed to and received  by Bray.

63.    The mailing of the letter, with its contents, to Plaintiff was a willful or intentional attempt by the USAO and Birotte to avoid or evade their responsibility and duty to investigate and/or prosecute Bray's filed criminal complaints.

64.    The pending criminal complaints were never investigated nor prosecuted. In part,  the failure to investigate the complaints was a violation of federal law.

65.    The failure by Birotte and the USAO to investigate the complaints denied Bray due process, or a due process investigation of his complaints.

66.    The conduct by Birotte, the USAO, and the unnamed AUSAs caused Bray the denial of his right to restitution, which could only be achieved through prosecution and conviction.   Bray suffered damages pursuant to the denial of restitution.

67.    The conduct by Birotte, the USAO , and the unnamed AUSAs was a part of a pattern of misconduct begun by O'Brien, the USAO, and the unnamed attorneys working in the Citizens Unit during O'Brien's tenure in office.   That misconduct, inter alia, was  intentionally refusing to investigate and/or prosecute criminal complaints filed by Bray because of his race, and, thereafter, drafting false and fraudulent letters claiming the USAO doesn't conduct investigations and mailing those letters to Bray in an attempt to rationalize the intentional refusal and evade their responsibility and duty to investigate and prosecute Bray's  Complaints.

**(Against  Federal Defendants)**

**COUNT  III**

**UNREASONABLE  SEARCH/MAIL**

**Violation of the Fourth Amendment**

**Violation of Fifth Amendment Equal Protection Clause**

***Bivens* Action**

68.    Plaintiff incorporates Paragraphs 1-67 by reference, as if fully set forth here.

69.    Plaintiff received several letters from one of his clients, Sayed  Jawaid , opened.   Mr. Jawaid is Indian and a Muslim by religion.  Plaintiff contends the

mail opening was  not only a product of racial discrimination against Plaintiff, but also a product of  racial profiling and racial and religious discrimination against Mr. Jawaid.

70.    The letters were uncut and closed or sealed prior to being delivered to the post office in LaVerne, California (or Pomona, California), but several letters were opened when they were received by Bray in his post office box.

71.    Neither Bray nor Jawaid gave their permission or consent to the  U.S. Postal Service or any postal employee, or anyone else in the postal service to open their mail.  Nor was  permission or consent given to the postal service to allow anyone outside the post office or postal workers to open their mail.

72.    There were no  search warrants issued or presented to Plaintiff or Mr. Jawaid for the mail openings.   Defendants opened the mail---sent by Jawaid and received by Bray---without a warrant and in violation of the Fourth Amendment to the United States Constitution.   The Defendants' search of Bray-Jawaid mail was an unreasonable search in violation of the Fourth Amendment.

73.    The  unreasonable search of Bray-Jawaid's mail was conducted because of both Bray's (African American) and Jawaid's (Indian ) race or color and because of Jawaid's religion (Muslim),  therefore, the  unreasonable search also violates Bray's and Jawaid's Fifth Amendment Equal Protection rights.

74.    Jawaid wrote and mailed  several letters to Bray using the same procedure. These were personal letters from client to attorney, and there were no expectation that the letters would be opened and reviewed by third parties.   The Defendants' opening of the letters was also an invasion of privacy.   The unlawful tampering with mail is also a crime.

**(Against  Federal  Defendants)**

# IV

## ILLEGAL SURVEILLANCE

### Violation of the Foreign Intelligence Surveillance Act, 50 U.S.C. sec. 1810

### Unreasonable Search/Violation of Fourth Amendment

75.    Plaintiff incorporates by reference Paragraphs 1-74 as if fully set forth herein.

76.    During the years 2008 to 2012, at various times, the federal government had Bray under surveillance. There were, among other things, wiretaps on his cell phone, a GPS device was place on his vehicle, he was followed by other vehicles, an undercover agent tried to get information from him while he was out socially, and his bank and bank account was invaded.

77.    The Defendants, FBI, officer-in-charge, and/or the USAO or other government agents, under color of law, used electronic, mechanical, and/or other surveillance devices or methods, without a warrant, to monitor Bray and his communications and/or activities, including telephone conversations, mail, etc., and to obtain information under circumstances in which Bray had a reasonable expectation of privacy and a warrant would be required for law enforcement purposes.

78.    The illegal surveillance was part of the racial discrimination exercised against Bray by the Defendants herein. There was no probable cause to believe Bray had engaged in any criminal activity, or any other valid or legal reason for the government to survey Bray.

79.    The use of the GPS device and wiretaps were also violations of Bray's Fourth Amendment right against unreasonable and warrantless searches.

80.    Defendants  FBI and Officer-in-charge and other FBI agents knew that they were violating the Constitution when they instituted the procedures without a warrant and without consent.

81.    The Defendants actions caused Bray to suffer damages, including mental and emotional pain suffering.

### (Against  Federal  Defendants)

### V

### VIOLATION OF RIGHT TO PRIVACY

### Violation  of the Privacy Act, 5 U.S.C. sec. 552a (e)(7), (g)(I)(D)

### Fourth Amendment/Ninth Amendment(Privacy)

82.    Plaintiff incorporates by reference Paragraphs  1-81 as though those paragraphs are fully set forth here.

83.    Defendants FBI and its agents collected information and/or maintained records describing how Plaintiff exercised his rights to liberty and free speech guaranteed by the First and Fifth Amendment .   The records or information maintained by the FBI or the federal government were not pertinent to any legal law enforcement purpose or within the scope of any law enforcement activity.

83A.    Plaintiff did not consent to any record-keeping of his personal movements, and he had the right to go about his personal and business life without the intrusiveness of government surveillance and recordkeeping.   And, Plaintiff suffered damages.

# VI

## MEDICAL   NEGLIGENCE

### Federal  Tort Claim Act

84.   Plaintiff incorporates by reference Paragraphs 1-83 as if fully set forth here.

85.   Plaintiff pleads further that pursuant to Title 28 U.S.C. secs. 2672 and 2675(a), that the claims set forth below were filed with and presented administratively to the Defendant United States of America and its agency, the Department of Veteran Affairs or the Veteran Administration, on July 8, 2011 for Plaintiff's tort claim herein.   On January 12, 2012,  the Department of Veteran Affairs denied the claim.  Accordingly,  Plaintiff has met all jurisdictional prerequisites and conditions for commencement and prosecution of this action.

86.   Liability of the United States is based on 28 U.S.C. secs. 1346 and 2674-75 because there were personal injury and resulting damage,  which were proximately caused by the negligence, wrongful acts and/or omissions of employees of the united states of America at the Veteran Administration facility in Los Angeles, California, while acting within the scope of their office, employment or duties, under circumstances where the United States of America, if a private person, would be liable to Plaintiff in the same manner and to the same extent as a private individual under the laws of California.

87.   The Department of Veteran Affairs is an agency of the United States, which at all times material hereto, owned, operated and controlled the health care facilities known as the Veterans  Adminstration, Los Angeles, and through its agency, the Department of Veteran Affairs staffed said health facilities with its agents,  servants,  and/or employees.

88.   At all times pertinent here, all persons involved in the medical and health care services provided to Plaintiff were agents, servants, and/or employees of the Department of Veteran Affairs, the United States of America, or some other agency thereof, and were at all times material hereto, acting within the course and scope of such employment.

89.   As referred to above, this is a Federal Tort Claim Act proceeding for monetary damages sustained by Plaintiff resulting from personal injuries as a result of negligent medical care.

90.   The claim herein concerns negligent medical care provided by agents, servants, and employees of the United States government at the Veterans Administration facility (West LA) which resulted in personal injury and pain and suffering to Plaintiff, first detected in July , 2009.

91.   The VA medical staff had prescribed a lotion, Selenium Sulfide, for a fungi on Plaintiff's neck and chest area.  Plaintiff had used this lotion before without incident.  However, when the medical professional prescribed the lotion for Plaintiff, she did not  warn Plaintiff about any possible adverse reactions stemming from the combination of the lotion coming into contact with silver metal and the skin.   There were no warnings given regarding the lotion's reaction to or with metal and the skin.   There were only directions given as to the use and application of the lotion.   Plaintiff applied the lotion around his neck and chest areas, while wearing a silver chain around his neck.  Plaintiff  left the chain on  overnight after applying the lotion.

92.   The next morning, Plaintiff discovered that his neck area, particularly where the chain was or had been in contact with his neck was  "burned" (the skin felt "hot" and was swollen and red in color) and/or irritated and red.  Plaintiff also

discovered that the silver chain had lost its silver color and  became a  "darkened' or black color.

93.    Subsequently, Plaintiff sought treatment for the burns at the V.A. Hospital in Los Angeles.

94.    Had Bray known that there would have been a reaction among the lotion, the silver chain, and the skin,  he would have taken the silver chain off before applying the lotion and left it off overnight and until he had shampooed or washed the lotion off the skin.    But since he had not been warned of any danger of any reaction between lotion and the chain, he left the chain on, believing that there would be no problem or adverse reaction.

95.    Bray's resulting injuries were caused by the failure of both the manufacturer and the medical professional to warn Bray of the possible chemical reaction of the sulfide lotion to metal.   It was several months before the skin was healed from the damage.

96.    Defendant United States of America was negligent in its care and treatment of Bray by failing to warn Bray of the possible chemical reaction of the selenium sulfide lotion to a metal chain,  and thereafter of the sulfide-metal reaction to human skin .

97.    At all times mentioned herein, the employees, agents, and/or representatives of the United States were negligent and proximately caused all of the injuries and damages sustained by Bray.   And, those said injuries and damages were at all times foreseeable.

98.    As a direct and proximate cause of Defendant United States' negligent acts and/or omissions , Plaintiff incurred damages, including but not limited to, pain and suffering and mental anguish.

99.    In this Complaint, whenever the United States of America or the State of California is designated as or the term "Defendant" is used, it means Defendant United States or the State of California, its officers, agents, servants, employees, and/or representatives.   And, whenever in this Complaint, it is alleged that the United States  or the State of California did any act or thing, it is meant that the United States'  or the State of California's officers, agents, servants, employees, and/or representatives did such a thing, and that at the time such act or thing was done, it was done with the full authorization and ratification of Defendants United States or State of California and was done in the normal and routine course and scope of employment of Defendants' officers, agents, servants, employees, and/or representatives.   Wherever in this Complaint it is alleged that Defendant  United States or the State of California omitted any act or thing, it is meant that Defendants,  Defendants' officers, agents, servants, employees, and/or representatives omitted such act or thing.

99A.    Defendant  Shinseki, Plaintiff alleges, has a special duty of care to veterans with respect to the medical negligence claim, and that special duty is or ought to be  to try and resolve veterans' claims during the administrative exhaustion period based on "common sense" or practical resolution rather than on a strictly legal basis and the so-called legal "standard  of care"(as would be the approach with non-veterans).   And, after utilizing the common sense or common knowledge approach during the exhaustion period (6 months), then, if the matter is not resolved, it can move on to the formal and legal format in federal court. Since this approach was not taken here,  Secretary Shinseki and the federal employees breached that duty of care,   was the proximate cause of damages not

being paid or the claim being resolved,  which resulted in the same damages being sought.

**(Against  Defendants Shinseki and  United States only)**

## COUNT  VII

### RACIAL DISCRIMINATION/EQUAL PROTECTION

### Violation of the Fourteenth Amendment Equal Protection Clause

### 42  U.S.C. sec. 1981, 1983, and 1985(3)

100.    Plaintiff incorporates by reference Paragraphs 1-99 as if fully set forth here.

101.    The State of California , through its  Superior Court judges; in particular, but not limited to,  judges Steven Hintz, Barry Klopfer, Ken Riley,  David Long, Robert Perry, and  Michael Pastor,  demonstrated a pattern of discriminating against professional/semi-professional black males as the black males engaged in the judicial process, in both the civil and criminal aspects of the process.

102.    The pattern of discrimination against professional black males by the Superior Court of California, at least, if not before, began with discrimination against Bray, as a Black lawyer, as he engaged the civil judicial process in Ventura County,  CA Superior Court in 2002-2003.   During an unlawful detainer jury trial, judge Hintz  discriminated against Bray by intentionally denying him his right to a jury  decision  (and, therefore, a jury trial) and causing his wrongful eviction from his home-law office, because Bray was Black.   He intentionally denied Bray his constitutional and statutory rights to a jury trial and jury decision after Bray had specifically requested and paid for both.   The jury posed a question to Hintz, as the presiding judge, which was the very question (or similar), it, the jury, had to answer to resolve the case.   Hintz intentionally answered the question, and

27

answered it in a way that would deny Bray relief, or cause his eviction (Hintz could have answered the question in a way that would have granted Bray relief, i.e., "yes", rather than "no"—and "yes" was the correct answer to the jury's question). Hintz, thereafter, in open court, without a request from Bray, intentionally denied Bray a stay of the eviction, *without a hearing*.

103.    Thereafter, Superior Court judges Klopfer, Riley, and Long, as Superior Court appellate judges, continued to deny Bray his constitutional rights on appeal by, inter alia, lying or making false statements in their appellate opinion for the purpose of denying Bray relief and supporting the illegal judgment of Hintz.

104.    Thereafter, the State of California, through its Court of Appeals, which sits in Ventura County, refused to grant Bray an appeal of the fraudulent appellate decision by Klopfer, Riley, and Long.   Moreover, this same state appellate court had earlier (instead of providing a written decision or order of Bray's appeal of Hintz's denied stay or overruling  Hintz's denial of a stay hearing) *informally* (by telephone) ordered the Superior Court to provide Bray with a hearing on his *formal request* for a stay (through a written motion)(after Hintz had denied Bray a stay without a request for one ), without  ordering a new judge hear the matter and without granting an appeal of Hintz's stay order (setting a high bond) after Hintz had  realistically  and technically denied the stay through setting the high bond.

105.    Discounting unknown , unnamed, or unidentified cases between 2004 and 2009, in 2009, the Superior Court, Los Angeles County, in continuing the pattern of discrimination, acting through judge  Michael Pastor, discriminated against one Dr. Conrad Murray, a black medical doctor, by intentionally suspending his medical license in California without a hearing during a pretrial criminal

proceeding.   The connection between the Bray case and the Murray case is the action of the two trial judges (Hintz and Pastor) in causing the deprivation of a right  or property, and , thereafter,  arbitrarily denying a stay of execution of the deprivation (that is, without a hearing on the stay).

106.   In 2010,  during or after a criminal trial,  Superior Court, Los Angeles County,  judge  Robert Perry usurped the province or domain of a jury and dismissed a gun enhancement conviction after a jury found that the gun was intentionally used in the killing of one Oscar Grant, a Black butcher.   The dismissal served to assist a white police officer  in avoiding  any real jail time for the murder of  Grant.    This action by Perry continued the pattern of the Superior Court of California discriminating against Black males and denying them constitutional rights during the course of judicial or court proceedings.

107.   The connection between the Bray case and the Grant-Johannes Mehserle case is the action of the two judges  usurping the province or domain of the jury and substituting their judgment and decision for that of the jury;   in essence, providing the Black males with a  bench trial instead of a  jury trial, which was demanded and/or required.   And, in the Grant case,  the Court of Appeals of California  just recently, i.e., June, 2012, decided Mehserle's appeal of his conviction, and with an opportunity  to correct judge Perry's unconstitutional actions (through the making of the  sufficiency of the evidence finding regarding the involuntary manslaughter charge,  which had been set forth  by Mehserle), the Court of Appeals provided no ruling on the matter.

108.     Bray, Murray, and Grant were all discriminated against on the basis of their race or color, and were treated differently from their white counterparts

engaged in the judicial process, or were treated in such a way that gives rise to an inference of discrimination based on their race or color.

109.    Bray suffered harm and damages from the discriminatory conduct, including the loss of his home-law office and the monetary value stemming therefrom.

110.    The State of California, through its agent judges and others conspired to deny Plaintiff's statutory and constitutional rights under color of law, and for the purpose of discriminating against Bray and denying him his rights based on his race or color, whether the discrimination was through acts of omission or commission.

**(Against State Defendants)**

**COUNT VIII**

**DENIAL OF DUE PROCESS/EQUAL PROTECTION**

**Violation of the Fifth Amendment Due Process and Equal Protection Clause**

***Bivens* Action**

**Violation of 42 U.S.C. sec. 1982**

**Violation of 18 U.S.C. sec. 3771(a)(5), (6), (8) and (c)(1)**

111.    Plaintiff incorporates by reference Paragraphs 1-110 as if fully set forth herein .

112.    Between the years 2007 and 2011, Plaintiff filed multiple criminal complaints in and with the U.S. Attorney's Office in Los Angeles.

113.    In none of the Complaints were Plaintiff actually contacted by the U.S. Attorney's office in terms of investigation of the Complaints.   Neither the U.S.

1  Attorney's office (USAO) or the FBI pursued any investigation of Plaintiff's

2  Complaints.

3  114.    The Department of Justice's failure to contact Plaintiff and investigate any

4  of the complaints formed a pattern of refusing to investigate the complaints and a

5  pattern of denying Plaintiff due process and equal protection of the law.

6
7  115.    Plaintiff was denied both procedural and substantive due process by the

8  Department's intentional refusal to investigate the Complaints.  Bray continued

9  to be denied his home-law office and restitution for the criminal acts.

10  116.    In forming the pattern of refusing to investigate Bray's Complaints, the

11  USAO and the Justice Department knowingly violated federal law and regulations

12  or guidelines dealing with victims' rights.

13  117.   In particular, 18 U.S.C. sec. 3771(c) required the DOJ officials, agents, and

14  employees to  "make their best efforts to see that crime victims are notified of,

15  and accorded, the rights described in subsection (a)" of the statute, i.e., sec. 3771.

16  DOJ  officials never did this.

17  118.    Most, though not all, of the complaints Bray filed were as a victim of crime.

18  The DOJ  never took any steps to secure Bray's rights pursuant to sec.  3771.

19  119.    In particular,  regarding a Complaint filed in 2007 and subsequently

20  amended in 2011,  Bray's right to possess property was(is) involved,  and his right

21  to restitution for the unlawful shutdown of his law office and practice was (is)

22  involved.  Both matters are fundamental concerns requiring fundamental fairness

23  in a decision as to whether he will continue to be deprived of his property and

24  liberty interest in his law office and the value of the loss of his law practice over

25  the years.

26

27

28

120.   More specifically, the FBI, regarding the 2007 Complaint conducted a covert investigation of Plaintiff's claim against judges Hintz and Barry Klopfer of the Ventura County Superior Court,  without notifying Bray, or making any efforts to do so.  And, pursuant to that investigation, found sufficient probable cause evidence to arrest Hintz and Klopfer , but instead of arresting them, worked out a deal or plea agreement with both Hintz and Klopfer, forcing them to retire from the bench rather than be arrested.   Not only was this process violative of sec. 3771(c), but it was also violative of 3771(a)(6), and intentionally so.

121.   Although Bray filed most of his complaints as a victim, he was never recognized or treated as a victim by the Department of Justice, at least in part because of his race or color.

122.   This pattern of conduct in refusing to investigate Bray's complaints and to treat  him as a victim began with U.S. Attorney O'Brien and his unnamed AUSAs and continued with  U.S. Attorney Birotte and his  AUSAs.   The decisions not to investigate by the USAO  came directly from O'Brien and Birotte,  and the decision not to prosecute also came directly from O'Brien and Birotte.  But, Eric Holder was also notified and was aware of the refusal to investigate,  and also was a part of and contributed to the pattern of neglect.   Bray also sent followup communications to the USAO,  urging the office to pursue the complaints, to no avail.

123.   The actions of O'Brien, Birotte,  and the various FBI Agents-in-Charge at the respective times, formed a pattern of denying Plaintiff due process and equal protection of the law in violation of the Due Process Clause of the Fifth Amendment of the United States Constitution.   Plaintiff was denied, or deprived

of, property and liberty interest without any hearings or trials to determine whether the deprivations were valid.

### (Against Federal Defendants)

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the Court grant the following forms of relief:

A. Injunctive Relief : (1) order the United States of America, or Steven R. Sellers, trustee, or whoever is in ownership and/or possession of the property in question located at 1019 E. Santa Clara Street, Ventura, CA, 93001, to immediately transfer possession of said property to Plaintiff, while allowing or causing Plaintiff to immediately take possession and ownership of the property; (2) order the government Defendants (federal and state) to pay all expenses on the property permanently or through a permanent injunction. The federal/state Defendants are required to pay all maintenance expenses for the said property, including any and all taxes, utilities, insurance, and any other required maintenance for the duration or rest of Plaintiff's life, as long as Plaintiff owns the property, or for the rest of Plaintiff's life. However, any maintenance decisions must be made or ratified by Plaintiff. Defendants' responsibilities regard payment of expenses only; (3) order the federal Defendants (or any other applicable Defendants) to destroy or return any information gathered through the unlawful surveillance program conducted by the federal government or any other government, and to refrain from once again attaching a tracking

device to Plaintiff's vehicle without a search warrant;  (4)  enjoin the federal government from conducting any future unlawful surveillance, that is, without a warrant or probable cause to believe any crime has been committed;  and (5) set aside the judgment in the state unlawful detainer case as being void, or for any other appropriate basis based on unconstitutional or other reasons.

B.   Compensatory and Punitive Damages (for violations of the laws of the United States and California), in an amount to be proven at trial.   Such damages will include special damages, e.g., storage fees and post office boxes, and other compensatory damages related to Plaintiff's law office.

C.  Federal Tort Claim Act damages identified in the administrative complaint.

D.   Costs, and where found to be applicable, attorney's fees.

E.  Any other appropriate and proper relief that the Court deems warranted.

I declare under the penalty of perjury that the foregoing, based on either personal knowledge or upon information and belief, are true and correct to the best of my knowledge and belief.

Executed on _July 1, 2012_____, 2012 at Los Angeles, California

LAURACK D. BRAY

34

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

Lauvack D. Bray

**DEFENDANTS**

Department of Justice, et.al.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Lauvack D. Bray
P.O. Box 611432
Los Angeles, CA 90061

Attorneys (If Known)

Civil Division
U.S. Attorney's Office, Los Angeles

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☐ 3 Federal Question (U.S. Government Not a Party)

☒ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)   N/A

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☐ No    ☒ **MONEY DEMANDED IN COMPLAINT: $** TBD

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
42 U.S.C. Sec. 1981, 1982, 1985; Federal Tort Claim Act/Racial discrim.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☒ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | **REAL PROPERTY** | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | **IMMIGRATION** | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:    Case Number:**    CV12-5704

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)    CIVIL COVER SHEET    Page 1 of 2

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a). IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed?   ☑ No   ☐ Yes
If yes, list case number(s): **SACV11-00301**

VIII(b). RELATED CASES: Have any cases been previously filed in this court that are related to the present case?   ☐ No   ☑ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☑ A.  Arise from the same or closely related transactions, happenings, or events; or
　　　　　　　　　　　　　　 ☑ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
　　　　　　　　　　　　　　 ☑ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
　　　　　　　　　　　　　　 ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
　　☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles/Ventura | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
　　☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
　　Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles/Ventura | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): *Laurack D. Bray*   Date *July 1, 2012*

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |